<table>
<tr><td>with a copy to:</td><td>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attention: Steven D. Klein, Esq.<br>Facsimile No.: 212-728-9221</td></tr>
<tr><td>If to Borrower:</td><td>c/o Petra Capital Management LLC<br>1370 Avenue of the Americas, 23rd Floor<br>New York, New York 10019<br>Attention: Mr. Joseph Iacono<br>Facsimile No.: (212) 489-1.629</td></tr>
<tr><td>with copies to:</td><td>Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, New York 10022<br>Attention: Bruce S. Cybul, Esq.<br>Facsimile No.: (212) 593-5955</td></tr>
</table>

A Notice shall be deemed to have been given: in the case of hand delivery or delivery by a reputable overnight courier, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; in the case of expedited prepaid delivery and telecopy, upon the first attempted delivery on a Business Day; or in the case of telecopy, upon sender's receipt of a machine-generated confirmation of successful transmission after advice by telephone to recipient that a telecopy Notice is forthcoming.

Section 10.7 <u>Trial by Jury</u>.    LENDER, BORROWER AND ALL PERSONS CLAIMING BY, THROUGH OR UNDER SUCH PARTY EACH HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF BORROWER AND LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER OR LENDER, AS THE CASE MAY BE.

Section 10.8 <u>Headings</u>.  The Article and/or Section headings and the Table of Contents in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

Section 10.9 <u>Severability</u>.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such

provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

Section 10.10 <u>Preferences</u>. Lender shall have the continuing and exclusive right to apply or reverse and reapply any and all payments by Borrower to any portion of the Obligations of Borrower hereunder. To the extent Borrower makes a payment or payments to Lender, which payment or proceeds or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the Obligations hereunder or part thereof intended to be satisfied shall be revived and continue in full force and effect, as if such payment or proceeds had not been received by Lender.

Section 10.11 <u>Waiver of Notice</u>. Borrower hereby expressly waives, and shall not be entitled to, any notices of any nature whatsoever from Lender except with respect to matters for which this Agreement or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Borrower is not, pursuant to applicable Legal Requirements, permitted to waive the giving of notice.

Section 10.12 <u>Intentionally Omitted</u>.

Section 10.13 <u>Expenses; Indemnity</u>.

(a) Borrower covenants and agrees to pay or, if Borrower fails to pay, to reimburse, Lender upon receipt of notice from Lender for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender after the Closing Date in connection with (i) intentionally omitted; (ii) except as otherwise provided in this Agreement, Borrower's ongoing performance of and compliance with Borrower's respective agreements and covenants contained in this Agreement and the other Loan Documents on its part to be performed or complied with after the Closing Date, including, without limitation, confirming compliance with environmental and insurance requirements; (iii) intentionally omitted; (iv) securing Borrower's compliance with any requests made pursuant to the provisions of this Agreement and the other Loan Documents; (v) intentionally omitted; (vi) enforcing or preserving any rights, either in response to third party claims or in prosecuting or defending any action or proceeding or other litigation, in each case against, under or affecting Borrower, this Agreement, the other Loan Documents, the Property, or any other security given for the Loan; and (vii) enforcing any obligations of or collecting any payments due from Borrower under this Agreement, the other Loan Documents or with respect to the Property or in connection with any refinancing or restructuring of the credit arrangements provided under this Agreement in the nature of a "work-out" or of any insolvency or bankruptcy proceedings; <u>provided</u>, <u>however</u>, that Borrower shall not be liable for the payment of any such costs and expenses to the extent the same arise by reason of the gross negligence, illegal acts, fraud or willful misconduct of Lender, under <u>Section 9.7</u> or as otherwise set forth herein. Any cost and expenses due and payable to Lender may be paid, at Lender's option, from any amounts in the Lockbox Account or Cash Management Account.

(b)     Borrower shall indemnify, defend and hold harmless Lender from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel for Lender in connection with any investigative, administrative or judicial proceeding commenced or threatened, whether or not Lender shall be designated a party thereto), that may be imposed on, incurred by, or asserted against Lender in any manner relating to or arising out of (i) any breach by Borrower of its obligations under, or any material misrepresentation by Borrower contained in, this Agreement or the other Loan Documents, or (ii) the use or intended use of the proceeds of the Loan (collectively, the "**Indemnified Liabilities**"); provided, however, that Borrower shall not have any obligation to Lender hereunder to the extent that such Indemnified Liabilities arise from the gross negligence, illegal acts, bad faith, fraud or willful misconduct of Lender. To the extent that the undertaking to indemnify, defend and hold harmless set forth in the preceding sentence may be unenforceable because it violates any law or public policy, Borrower shall pay the maximum portion that it is permitted to pay and satisfy under applicable law to the payment and satisfaction of all Indemnified Liabilities incurred by Lender.

Section 10.14  Schedules Incorporated.   The Schedules annexed hereto are hereby incorporated herein as a part of this Agreement with the same effect as if set forth in the body hereof.

Section 10.15  Offsets, Counterclaims and Defenses.  Any assignee of Lender's interest in and to this Agreement, the Note and the other Loan Documents shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to such documents which Borrower may otherwise have against any assignor of such documents, and no such unrelated counterclaim or defense shall be interposed or asserted by Borrower in any action or proceeding brought by any such assignee upon such documents and any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower unless such offset, counterclaim or defense would otherwise be forfeited.

Section 10.16  No Joint Venture or Partnership; No Third Party Beneficiaries.

(a)     Borrower and Lender intend that the relationships created hereunder and under the other Loan Documents be solely that of borrower and lender. Nothing herein or therein is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Borrower and Lender nor to grant Lender any interest in the Property other than that of mortgagee, beneficiary or lender.

(b)     This Agreement and the other Loan Documents are solely for the benefit of Lender and Borrower and nothing contained in this Agreement or the other Loan Documents shall be deemed to confer upon anyone other than Lender and Borrower any right to insist upon or to enforce the performance or observance of any of the obligations contained herein or therein. All conditions to the obligations of Lender to make the Loan hereunder are imposed solely and exclusively for the benefit of Lender and no other Person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make the Loan (or any disbursement of Reserve Funds) in the absence of

strict compliance with any or all thereof and no other Person shall under any circumstances be deemed to be a beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Lender if, in Lender's sole discretion, Lender deems it advisable or desirable to do so.

Section 10.17  Publicity.  All news releases, publicity or advertising by either party or its Affiliates through any media intended to reach the general public which refers to the Loan Documents or the financing evidenced by the Loan Documents, to Lender, Borrower, or any of their Affiliates shall be subject to the prior approval of the other party hereto.

Section 10.18  Waiver of Marshalling of Assets.  To the fullest extent permitted by law, Borrower, for itself and its successors and assigns, waives all rights to a marshalling of the assets of Borrower, Borrower's partners and others with interests in Borrower, and of the Property, or to a sale in inverse order of alienation in the event of foreclosure of the Mortgage, and agrees not to assert any right under any laws pertaining to the marshalling of assets, the sale in inverse order of alienation, homestead exemption, the administration of estates of decedents, or any other matters whatsoever to defeat, reduce or affect the right of Lender under the Loan Documents to a sale of the Property for the collection of the Debt without any prior or different resort for collection or of the right of Lender to the payment of the Debt out of the net proceeds of the Property in preference to every other claimant whatsoever.

Section 10.19  Waiver of Offsets/Defenses/Counterclaims.  Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender or its agents or otherwise to offset any Obligations under the Loan Documents. No failure by Lender to perform any of its obligations hereunder shall be a valid defense to, or result in any offset against, any payments which Borrower is obligated to make under any of the Loan Documents.

Section 10.20  Conflict; Construction of Documents; Reliance.  In the event of any conflict between the provisions of this Agreement and any of the other Loan Documents, the provisions of this Agreement shall control. The parties hereto acknowledge that they were represented by competent counsel in connection with the negotiation, drafting and execution of the Loan Documents and that such Loan Documents shall not be subject to the principle of construing their meaning against the party which drafted same. Borrower acknowledges that, with respect to the Loan, Borrower shall rely solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Lender or any parent, subsidiary or Affiliate of Lender. Lender shall not be subject to any limitation whatsoever in the exercise of any rights or remedies available to it under any of the Loan Documents or any other agreements or instruments which govern the Loan by virtue of the ownership by it or any parent, subsidiary or Affiliate of Lender of any equity interest any of them may acquire in Borrower, and Borrower hereby irrevocably waives the right to raise any defense or take any action on the basis of the foregoing with respect to Lender's exercise of any such rights or remedies. Borrower acknowledges that Lender engages in the business of real estate financings and other real estate transactions and investments which may be viewed as adverse to or competitive with the business of Borrower or its Affiliates.

Section 10.21 <u>Brokers and Financial Advisors</u>.

(a)     Intentionally Omitted.

(b)     Borrower and Lender each hereby represents that it has dealt with no financial advisors, brokers, underwriters, placement agents, agents or finders in connection with the transactions contemplated by this Agreement. Borrower and Lender hereby agree to indemnify, defend and hold the other harmless from and against any and all claims, liabilities, costs and expenses of any kind (including reasonable attorneys' fees and expenses) in any way relating to or arising from a claim that any person or entity acted on behalf of Borrower or Lender in connection with the transactions contemplated herein. The provisions of this section shall survive any release or termination of this Agreement whether occasioned by a repayment of the indebtedness secured hereby or otherwise.

Section 10.22 <u>Prior Agreements</u>.   This Agreement and the other Loan Documents contain the entire agreement of the parties hereto and thereto in respect of the transactions contemplated hereby and thereby, and all prior agreements among or between such parties, whether oral or written, between Borrower and Lender are superseded by the terms of this Agreement and the other Loan Documents.

Section 10.23 <u>Duplicate Originals, Counterparts</u>.   This Agreement may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Agreement may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Agreement. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

**[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the parties hereto have caused this Amended and Restated Loan Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**BORROWER**:

**ALT HOTEL, LLC**, a Delaware limited liability company

By:_____
        Name:
        Title:

**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

**LENDER**:

[_____]

By:_____
    Name:
    Title:

## <u>SCHEDULE I</u>

LEASES

1. Space Lease executed by Chicago Gifts and Novelties, Inc., as lessee, and Bristol Management L.P., as the manager of Bristol Hotel Tenant Company, as lessor, dated January 15, 1999.

2. **[TO BE UPDATED AS NECESSARY]**

## **SCHEDULE II**

Intentionally Omitted

## <u>SCHEDULE III</u>

<u>Organizational Structure</u>

(See attached)

## **SCHEDULE IV**

<u>Intentionally Omitted</u>

## SCHEDULE V

Intentionally Omitted

## SCHEDULE VI

**LIST OF APPROVED MANAGERS, APPROVED CASH MANAGEMENT MANAGERS
AND HOTEL COMPANIES**

## <u>SCHEDULE VII</u>

<u>Intentionally Omitted</u>

## **SCHEDULE VIII**

Intentionally Omitted

## **SCHEDULE IX**

Intentionally Omitted

**SCHEDULE X**
**UNION CONTRACTS**

1.      Contract dated September 1, 2002 (as amended) with the Hotel Employees and
        Restaurant Employees Union Local No. 1 AFL-CIO and Hotel, Motel, Club, Cafeteria
        Restaurant Employees and Bartenders Union Local No. 450 AFL-CIO

2.      Collective Bargaining Agreement dated July 1, 2000 (as amended) with the International
        Union of Operating Engineers AFL-CIO — Local 399

3.      Contract dated April 24, 2003 (as amended) with the Painters District Counsel No. 14 and
        the Painting and Decorating Painters Contractors Association, Chicago Council.

4.      **[TO BE UPDATED AS NECESSARY]**

## EXHIBIT A

## LEGAL DESCRIPTION

PARCEL 1:

LOT 1 IN ALLERTON'S SUBDIVISION, BEING A RESUBDIVISION OF THE WEST 1/2 OF THE SOUTH 1/2 OF BLOCK 45 AND THE WEST 1 50/100 FEET OF THE SOUTHEAST 1/4 OF SAID BLOCK 45 IN KINZIE'S ADDITION TO CHICAGO IN THE NORTH FRACTION OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PARCEL 2:

EASEMENT FOR THE BENEFIT OF PARCEL 1 FOR USE AND MAINTENANCE OF SIGNAGE ATTACHED TO THE FACADE, INGRESS AND EGRESS, STRUCTURAL SUPPORT AND SUCH OTHER APPURTENANT EASEMENTS AS SET FORTH IN ARTICLE 2 AND SUCH OTHER SECTIONS THEREIN AS CREATED BY THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS RECORDED JUNE 10, 2002 AS DOCUMENT NUMBER 0020643764, AND RERECORDED AUGUST 23, 2002 AS DOCUMENT NUMBER 0020927679, MADE BY FELCOR HOTEL ASSET COMPANY, LLC OVER THE FOLLOWING LAND:

LOT 2 IN THE PLAT OF ALLERTON'S SUBDIVISION, BEING A RESUBDIVISION OF THE WEST 1/2 OF THE SOUTH 1/2 OF BLOCK 45 AND THE WEST 1 50/100 FEET OF THE SOUTHEAST 1/4 OF SAID BLOCK 45 IN KINZIE'S ADDITION TO CHICAGO IN THE NORTH FRACTION OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Property Address:       701 N. Michigan Avenue, Chicago, Illinois 60611

Tax Parcel ID No.:      17-10-106-009

## EXHIBIT B

### FORM OF REPLACEMENT GUARANTY

### GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "**Guaranty**") is effective as of [_____], by [_____], a [_____], having an address at [_____] ("**Guarantor**"), for the benefit of DIAMONDROCK ALLERTON OWNER, LLC, a Delaware limited liability company, having an address at 6903 Rockledge Drive, Suite 800, Bethesda, MD 20817 ("**Lender**").

### RECITALS:

A. [_____] ("**Borrower**") is indebted, and may from time to time be further indebted, to Lender with respect to a loan ("**Loan**") made pursuant to that certain Amended and Restated Loan Agreement, originally dated as of [_____], between Borrower (successor in interest to [_____]) and Lender (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is evidenced by the Note (as defined in the Loan Agreement), and is secured by that certain Mortgage and Security Agreement of even date herewith (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Mortgage**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (together with the Note, the Loan Agreement and Mortgage, collectively, the "**Loan Documents**").

B. As of the date hereof (the "**Transfer Date**"), the Property has been Transferred to Borrower, and Borrower has assumed the Loan and the Loan Documents.

C. Lender requires that Guarantor, from and after the hereof provide this unconditional guarantee of payment and performance to Lender of the Guaranteed Obligations (as herein defined) on the terms and conditions contained herein.

D. As of the Transfer Date, Guarantor is the owner of a direct or indirect interest in Borrower, and Guarantor will directly benefit from Lender's making the Loan to Borrower.

E. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such term in the Loan Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

3

# ARTICLE 11

## NATURE AND SCOPE OF GUARANTY

Section 11.1 **Guaranty of Obligation**. Subject to the terms of this Guaranty, Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise but only to the extent same first arise and are due and payable from and after the Transfer Date. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor from and after the Transfer Date in accordance with this Guaranty.

Section 11.2 **Definition of Guaranteed Obligations**.

11.2.1 Subject to subparagraph (b) hereof as used herein, the term "**Guaranteed Obligations**" means (a) the obligations and liabilities of Borrower to Lender for which Borrower shall be personally liable to Lender pursuant to items (i), (ii), (iii), (iv), (v), (vi), (xii) (xiii) and (xiv) of Section 9.4 of the Loan Agreement and (b) payment of all the Debt from and after the occurrence of one or more of items (vii), (viii), (ix), (x), (xi) and (xii) of Section 9.4 of the Loan Agreement (provided, that, this subsection (b) shall only apply to occurrences of item (xii) that result in a substantive consolidation involving Borrower), in each case only to the extent the same first arise and are due and payable from and after the Transfer Date. Guarantor acknowledges that it shall be liable for payment of all of the Debt from and after the occurrence of the items set forth in subsection (b) above notwithstanding that the Debt is not fully recourse to Borrower under the terms of the Loan Agreement as a result of the items set forth in subsection (b).

11.2.2 Notwithstanding anything to the contrary contained herein or in any other Loan Document, with respect to Guarantor's obligations and liabilities for the Guaranteed Obligations, Guarantor agrees (and by accepting this Guaranty, Lender hereby agrees) that to the extent any of the following first arise and are due and payable from and after the Transfer Date, all of the Guaranteed Obligations of Guarantor under this Guaranty are recourse obligations of Guarantor, but not of any direct or indirect member, shareholder, partner, principal, affiliate, employee, officer, director, agent or representative of Guarantor (other than Borrower) and none of such direct or indirect member, shareholder, partner, principal, affiliate, employee, officer, director, agent or representative of Guarantor (other than Borrower) shall have any liability in its personal or individual capacity, but instead, all parties shall look solely to the property and the assets of Guarantor for satisfaction of any Guaranteed Obligations of any nature required to be paid by Guarantor to Lender under this Guaranty;

Section 11.3 **Nature of Guaranty**. This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor. The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced

4

shall not release or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

Section 11.4   **Guaranteed Obligations Not Reduced by Offset**.   The Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset or claim of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset or claim arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Section 11.5   **Payment By Guarantor**.   If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time payment of all or part of the Guaranteed Obligations is due, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

Section 11.6   **No Duty To Pursue Others**.   It shall not be necessary for Lender (and Guarantor hereby waive any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other person, (b) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (c) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (d) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (e) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (f) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 11.7   **Waivers**.   Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of (a) any loans or advances made by Lender to Borrower, (b) acceptance of this Guaranty, (c) any amendment or extension of the Note, the Loan Agreement or of any other Loan Documents, (d) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property, (e) the occurrence of any breach by Borrower or an Event of Default, (f) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (g) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, (h) protest, proof of non-payment or default by Borrower, and (i) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in

5

connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and/or the obligations hereby guaranteed except as specifically provided for herein.

Section 11.8   **Payment of Expenses**.  In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, promptly after demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder.  The covenant contained in this <u>Section 1.8</u> shall survive the payment and performance of the Guaranteed Obligations.

Section 11.9   **Effect of Bankruptcy**.   In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect, and this Guaranty shall remain in full force and effect.  It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

Section 11.10 **Waiver of Subrogation, Reimbursement and Contribution**. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Obligations for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

Section 11.11 **Borrower**.  The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

## ARTICLE 12

### EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

To the extent permitted by law, Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights which Guarantor might otherwise have as a result of or in connection with any of the following:

6

Section 12.1 **Modifications**. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Mortgage, the Loan Agreement, the other Loan Documents, or any other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

Section 12.2 **Adjustment**. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

Section 12.3 **Condition of Borrower or Guarantor**. The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantor or any other party at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the shareholders, partners or members of Borrower or Guarantor; or any reorganization of Borrower or Guarantor.

Section 12.4 **Invalidity of Guaranteed Obligations**. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including without limitation the fact that (a) the Guaranteed Obligations, or any part thereof, exceed the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Note, the Mortgage, the Loan Agreement or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Note, the Mortgage, the Loan Agreement or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

Section 12.5 **Release of Obligors**. Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by Guarantor that Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of any other party, and Guarantor have not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to other Persons to pay or perform the Guaranteed Obligations.

Section 12.6  **Other Collateral**.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

Section 12.7  **Release of Collateral**.  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

Section 12.8  **Care and Diligence**.  The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

Section 12.9  **Unenforceability**.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor are not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations.

Section 12.10  **Offset**.  The Note, the Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder shall not be reduced, discharged or released by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other Person, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Section 12.11  **Merger**.  The reorganization, merger or consolidation of Borrower into or with any Person.

Section 12.12  **Preference**.  Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

Section 12.13  **Other Actions Taken or Omitted**.  Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantor that

8

Guarantor shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

## ARTICLE 13

### REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as follows:

Section 13.1  **Benefit**.  Guarantor is an Affiliate and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

Section 13.2  **Familiarity and Reliance**.  Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Obligations; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

Section 13.3  **No Representation By Lender**.  Neither Lender nor any other party has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty.

Section 13.4  **Guarantor's Financial Condition**.  As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities.

Section 13.5  **Legality**.  The execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any applicable law, statute or regulation of any court or governmental agency or body having jurisdiction over Guarantor (except for such violations that would not reasonably be expected to result in a material adverse effect on the financial condition of Guarantor, Borrower or the Property), or constitute a default under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which Guarantor is a party or which may be applicable to Guarantor (except for such violations that would not reasonably be expected to result in a material adverse effect on the financial condition of Guarantor, Borrower or the Property).  This Guaranty is a legal and binding obligation of Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium or other rights and to general equity principles.

9

Section 13.6  **Survival**.  All representations and warranties made by Guarantor herein shall survive the execution hereof.

## ARTICLE 14

### SUBORDINATION OF CERTAIN INDEBTEDNESS

Section 14.1  **Subordination of All Guarantor Claims**.  As used herein, the term "Guarantor Claims" shall mean all debts and liabilities of Borrower to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantor.  The Guarantor Claims shall include without limitation all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Obligations.  Upon the occurrence of an Event of Default and its continuance, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any amount upon Guarantor Claims.

Section 14.2  **Claims in Bankruptcy**.  In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims.  Guarantor hereby assigns such dividends and payments to Lender.  Should Lender receive, for application against the Guaranteed Obligations, any such dividend or payment which is otherwise payable to Guarantor, and which, as between Borrower and Guarantor, shall constitute a credit against Guarantor Claims, then upon indefeasible payment to Lender in full of the Guaranteed Obligations, Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Lender had not received dividends or payments upon Guarantor Claims.

Section 14.3  **Payments Held in Trust**.  Notwithstanding anything to the contrary in this Guaranty, in the event that Guarantor shall receive any funds, payments, claims or distributions which are prohibited by this Guaranty, Guarantor agrees that the receiving Guarantor shall hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenant that the receiving Guarantor shall promptly pay the same to Lender.

Section 14.4   **Liens Subordinate**.   Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach.   Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

# ARTICLE 15

## MISCELLANEOUS

Section 15.1   **Waiver**.   No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.   The rights of Lender hereunder shall be in addition to all other rights provided by law. Subject to the further provisions of Section 5.5, no consent to departure from or waiver of any provision of this Guaranty shall extend beyond the particular case and purpose involved.   No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 15.2   **Notices**.   Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on the third day following the day such notice is deposited with the United States Postal Service first class certified mail, return receipt requested, addressed to the address, as set forth below, of the party to whom such notice is to be given, or to such other address as either party shall in like manner designate in writing.   The addresses of the parties hereto are as follows:

Guarantor:        [_____]
                  [_____]
                  [_____]
                  [_____]
                  [_____]


with a copy to:   [_____]
                  [_____]
                  [_____]
                  [_____]

11

[_____]

|              |                                          |
|--------------|------------------------------------------|
| Lender:      | DiamondRock Allerton Owner, LLC          |
|              | c/o DiamondRock Hospitality Company      |
|              | 6903 Rockledge Drive, Suite 800          |
|              | Bethesda, Maryland  20817                |
|              | Attention:  Chief Financial Officer      |
|              | Facsimile No.: (240) 744-1199            |
|              |                                          |
| with a copy to: | DiamondRock Allerton Owner, LLC       |
|              | c/o DiamondRock Hospitality Company      |
|              | 6903 Rockledge Drive, Suite 800          |
|              | Bethesda, Maryland  20817                |
|              | Attention:  General Counsel              |
|              | Facsimile No.: (240) 744-1199            |

Section 15.3    **Governing Law**.  This Guaranty shall be governed in accordance with the State of New York and the applicable law of the United States of America.

Section 15.4    **Invalid Provisions**.  If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

Section 15.5    **Amendments**.  This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

12

Section 15.6   **Parties Bound; Assignment; Joint and Several**.  This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that Guarantor may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder.  The obligations and liabilities of Guarantor hereunder shall, except as expressly set forth herein, be joint and several.

Section 15.7   **Headings**.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

Section 15.8   **Recitals**.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 15.9   **Counterparts**.  To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all Persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.  Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

Section 15.10   **Rights and Remedies**.  If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 15.11 **ENTIRETY.  THIS GUARANTY EMBODIES THE FINAL AND ENTIRE AGREEMENT OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTORS' GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF.  THIS GUARANTY IS INTENDED BY GUARANTOR AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THIS GUARANTY, AND NO COURSE OF DEALING BETWEEN GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS**

13

GUARANTY AGREEMENT.   THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTOR AND LENDER.

**Section 15.12  <u>WAIVER OF RIGHT TO TRIAL BY JURY</u>.  EACH PARTY HERETO AND ALL PERSONS CLAIMING BY, THROUGH OR UNDER SUCH PARTY EACH HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE LOAN AGREEMENT, THE MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.   THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY HERETO AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY LENDER OR GUARANTOR, AS THE CASE MAY BE.**

Section 15.13  **<u>Guarantor's Assets</u>**.  Guarantor covenants and agrees that, except for normal and customary loan payments and distributions of capital and profits and the payment of employee salaries and benefits and dividends in the ordinary course of business, Guarantor shall not voluntarily dispose of its assets other than on an arms-length basis in exchange for fair consideration.   Until all of the Guaranteed Obligations have been paid in full, Guarantor shall maintain total assets of $50,000,000.00 (in name or under management) and (except with respect to a pension advisory firm or similar fiduciary) capital/statutory surplus or shareholder's equity of $10,000,000.00.

Section 15.14  **<u>Reinstatement in Certain Circumstances</u>**.   If at any time any payment of the principal of or interest under the Note or any other amount payable by the Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise and such payment satisfied any Guaranteed Obligations, Guarantor's obligations hereunder with respect to such Guaranteed Obligations shall be reinstated as though such payment has been due but not made at such time.

**[NO FURTHER TEXT ON THIS PAGE]**

14

IN WITNESS WHEREOF, Guarantor has executed this Guaranty Agreement as of the day and year first above written,

**<u>GUARANTOR:</u>**

[_____]

By:  _____

Name:

Title:

*Signature Page to Guaranty Agreement*

*Signature Page to Guaranty Agreement*

Amended and Restated Guaranty Agreement

## AMENDED AND RESTATED GUARANTY AGREEMENT

THIS AMENDED AND RESTATED GUARANTY AGREEMENT (this "**Guaranty**") is effective as of [_____], by PS CDO MANAGER, LLC, a Delaware limited liability company, having an address at c/o Petra Capital Management LLC, 1370 Avenue of the Americas, 23rd Floor, New York, New York 10019 ("**Guarantor**"), for the benefit of DIAMONDROCK ALLERTON OWNER, LLC, a Delaware limited liability company, having an address at 6903 Rockledge Drive, Suite 800, Bethesda, MD  20817 ("**Lender**").

## RECITALS:

A.    Borrower is indebted, and may from time to time be further indebted, to Lender with respect to a loan ("**Loan**") made pursuant to that certain Amended and Restated Loan Agreement, of even date herewith, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is evidenced by the Note (as defined in the Loan Agreement), and is secured by that certain Mortgage and Security Agreement of even date herewith (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Mortgage**"), and further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (together with the Note, the Loan Agreement and Mortgage, collectively, the "**Loan Documents**").

B.    Guarantor entered into that certain Guaranty Agreement (the "**Original Guaranty**"), dated as of October 1, 2010, pursuant to which Guarantor provided the unconditional guarantee of payment and performance to Lender of the Guaranteed Obligations (as defined therein) from and after the date of the Original Guaranty (the "**Original Transfer Date**");

C.    Lender requires that, in accordance with the Plan of Reorganization, Guarantor from and after the hereof (the "**A&R Transfer Date**") provide this unconditional guarantee of payment and performance to Lender of the Guaranteed Obligations (as herein defined) on the terms and conditions contained herein.

D.    As of the Original Transfer Date, Guarantor has been the owner of a direct or indirect interest in Borrower.

E.    Guarantor is willing to amend and restate the terms of the Original Guaranty in accordance with the terms and conditions of this Guaranty.

F.    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such term in the Loan Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

# ARTICLE I

## NATURE AND SCOPE OF GUARANTY

**Section 1.1** **Guaranty of Obligation**.  Subject to the terms of this Guaranty, Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise but only to the extent same first arise and are due and payable from and after the A&R Transfer Date. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor from and after the A&R Transfer Date in accordance with this Guaranty.

**Section 1.2** **Definition of Guaranteed Obligations**.

(a) Subject to subparagraph (b) hereof as used herein, the term "**Guaranteed Obligations**" means the obligations and liabilities of Borrower to Lender but only to the extent same first arise and are due and payable from and after the A&R Transfer Date for which Borrower shall be personally liable to Lender pursuant to items (vii), (viii), (ix), (x), (xi), (xii), (xiii), (xiv) and (xv) of Section 9.4 of the Loan Agreement.

(b) Notwithstanding anything to the contrary contained herein or in any other Loan Document, with respect to Guarantor's obligations and liabilities for the Guaranteed Obligations, Guarantor agrees (and by accepting this Guaranty, Lender hereby agrees) that to the extent any of the following first arise and are due and payable from and after the A&R Transfer Date:

(i) all of the Guaranteed Obligations of Guarantor under this Guaranty are recourse obligations of Guarantor, but not of any direct or indirect member, shareholder, partner, principal, affiliate, employee, officer, director, agent or representative of Guarantor (other than Borrower) and none of such direct or indirect member, shareholder, partner, principal, affiliate, employee, officer, director, agent or representative of Guarantor (other than Borrower) shall have any liability in its personal or individual capacity, but instead, all parties shall look solely to the property and the assets of Guarantor for satisfaction of any Guaranteed Obligations of any nature required to be paid by Guarantor to Lender under this Guaranty;

(ii) with respect to those certain of the Guaranteed Obligations incorporated by reference herein through items (vii), (viii), (ix), (x) and (xi) of Section 9.4 of the Loan Agreement, the maximum aggregate liability of Guarantor hereunder with respect thereto shall be limited to $15,800,000.00;

(iii) with respect to those certain of the Guaranteed Obligations incorporated by reference herein though items (xii), (xiii), (xiv) and (xv) of Section 9.4 of the Loan Agreement, the maximum aggregate liability of Guarantor hereunder with respect thereto shall be limited to $11,850,000.00.

2

**Section 1.3**   **Nature of Guaranty**.  This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations.  This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

**Section 1.4**   **Guaranteed Obligations Not Reduced by Offset**.   The Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset or claim of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset or claim arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

**Section 1.5**   **Payment By Guarantor**.  If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein.  Such demand(s) may be made at any time coincident with or after the time payment of all or part of the Guaranteed Obligations is due, and may be made from time to time with respect to the same or different items of Guaranteed Obligations.  Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

**Section 1.6**   **No Duty To Pursue Others**.  It shall not be necessary for Lender (and Guarantor hereby waive any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other person, (b) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan, (c) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (d) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (e) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (f) resort to any other means of obtaining payment of the Guaranteed Obligations.  Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

**Section 1.7**   **Waivers**.  Guarantor agrees to the provisions of the Loan Documents, and hereby waives notice of (a) any loans or advances made by Lender to Borrower, (b) acceptance of this Guaranty, (c) any amendment or extension of the Note, the Loan Agreement or of any other Loan Documents, (d) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property, (e) the occurrence of any breach by Borrower or an Event of Default, (f) Lender's

3

transfer or disposition of the Guaranteed Obligations, or any part thereof, (g) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, (h) protest, proof of non-payment or default by Borrower, and (i) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and/or the obligations hereby guaranteed except as specifically provided for herein.

Section 1.8    **Payment of Expenses**.  In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, promptly after demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder.  The covenant contained in this Section 1.8 shall survive the payment and performance of the Guaranteed Obligations.

Section 1.9    **Effect of Bankruptcy**.  In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect, and this Guaranty shall remain in full force and effect.  It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

Section 1.10    **Waiver of Subrogation, Reimbursement and Contribution**. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for payment of any or all of the Guaranteed Obligations for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

Section 1.11    **Borrower**.  The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

## ARTICLE II

### EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

To the extent permitted by law, Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any

4

common law, equitable, statutory or other rights which Guarantor might otherwise have as a result of or in connection with any of the following:

Section 2.1 **Modifications**. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Mortgage, the Loan Agreement, the other Loan Documents, or any other document, instrument, contract or understanding between Borrower and Lender, or any other parties, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

Section 2.2 **Adjustment**. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

Section 2.3 **Condition of Borrower or Guarantor**. The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, Guarantor or any other party at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or Guarantor, or any changes in the shareholders, partners or members of Borrower or Guarantor; or any reorganization of Borrower or Guarantor.

Section 2.4 **Invalidity of Guaranteed Obligations**. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including without limitation the fact that (a) the Guaranteed Obligations, or any part thereof, exceed the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Note, the Mortgage, the Loan Agreement or the other Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) the Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially uncollectible from Borrower, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Note, the Mortgage, the Loan Agreement or any of the other Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other Person be found not liable on the Guaranteed Obligations or any part thereof for any reason.

Section 2.5 **Release of Obligors**. Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by Guarantor that Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of any other party, and Guarantor have not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons will be liable to pay or perform the

5

Guaranteed Obligations, or that Lender will look to other Persons to pay or perform the Guaranteed Obligations.

**Section 2.6** **Other Collateral**. The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

**Section 2.7** **Release of Collateral**. Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

**Section 2.8** **Care and Diligence**. The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

**Section 2.9** **Unenforceability**. The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by Guarantor that Guarantor are not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations.

**Section 2.10** **Offset**. The Note, the Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder shall not be reduced, discharged or released by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other Person, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

**Section 2.11** **Merger**. The reorganization, merger or consolidation of Borrower into or with any Person.

**Section 2.12** **Preference**. Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or someone else.

**Section 2.13** **Other Actions Taken or Omitted**. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations

pursuant to the terms hereof, it is the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as follows:

**Section 3.1** **Benefit**. Guarantor is an Affiliate and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

**Section 3.2** **Familiarity and Reliance**. Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Obligations; however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

**Section 3.3** **No Representation By Lender**. Neither Lender nor any other party has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty.

**Section 3.4** **Guarantor's Financial Condition**. As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities.

**Section 3.5** **Legality**. The execution, delivery and performance by Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any applicable law, statute or regulation of any court or governmental agency or body having jurisdiction over Guarantor (except for such violations that would not reasonably be expected to result in a material adverse effect on the financial condition of Guarantor, Borrower or the Property), or constitute a default under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which Guarantor is a party or which may be applicable to Guarantor (except for such violations that would not reasonably be expected to result in a material adverse effect on the financial condition of Guarantor, Borrower or the Property). This Guaranty is a legal and binding obligation of Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium or other rights and to general equity principles.

**Section 3.6**   **Survival**.  All representations and warranties made by Guarantor herein shall survive the execution hereof.

### ARTICLE IV

### SUBORDINATION OF CERTAIN INDEBTEDNESS

**Section 4.1**   **Subordination of All Guarantor Claims**.  As used herein, the term "Guarantor Claims" shall mean all debts and liabilities of Borrower to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by Guarantor.  The Guarantor Claims shall include without limitation all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Obligations.   Upon the occurrence of an Event of Default and its continuance, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any amount upon Guarantor Claims.

**Section 4.2**   **Claims in Bankruptcy**.  In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving Guarantor as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims.  Guarantor hereby assigns such dividends and payments to Lender.  Should Lender receive, for application against the Guaranteed Obligations, any such dividend or payment which is otherwise payable to Guarantor, and which, as between Borrower and Guarantor, shall constitute a credit against Guarantor Claims, then upon indefeasible payment to Lender in full of the Guaranteed Obligations, Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Lender had not received dividends or payments upon Guarantor Claims.

**Section 4.3**   **Payments Held in Trust**.   Notwithstanding anything to the contrary in this Guaranty, in the event that Guarantor shall receive any funds, payments, claims or distributions which are prohibited by this Guaranty, Guarantor agrees that the receiving Guarantor shall hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenant that the receiving Guarantor shall promptly pay the same to Lender.

**Section 4.4**   **Liens Subordinate**.  Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing

8

payment of Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach.  Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

## ARTICLE V

## MISCELLANEOUS

**Section 5.1**    **Waiver**.  No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.  The rights of Lender hereunder shall be in addition to all other rights provided by law.  Subject to the further provisions of Section 5.5, no consent to departure from or waiver of any provision of this Guaranty shall extend beyond the particular case and purpose involved.  No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

**Section 5.2**    **Notices**.  Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be deemed to be received by the addressee on the third day following the day such notice is deposited with the United States Postal Service first class certified mail, return receipt requested, addressed to the address, as set forth below, of the party to whom such notice is to be given, or to such other address as either party shall in like manner designate in writing.  The addresses of the parties hereto are as follows:

|  |  |
|---|---|
| Guarantor: | PS CDO Manager, LLC |
|  | c/o Petra Capital Management LLC |
|  | 1370 Avenue of the Americas, 23rd Floor |
|  | New York, New York 10019 |
|  | Attention:  Mr. Mark Mortensen |
|  | Facsimile No.:  (212) 489-1629 |
|  |  |
| with a copy to: | Schulte Roth & Zabel LLP |
|  | 919 Third Avenue |
|  | New York, New York  10022 |
|  | Attention:  Bruce S. Cybul, Esq. |
|  | Facsimile No.:  (212) 593-5955 |

Lender:                    DiamondRock Allerton Owner, LLC
                           c/o DiamondRock Hospitality Company
                           6903 Rockledge Drive, Suite 800
                           Bethesda, Maryland  20817
                           Attention:  Chief Financial Officer
                           Facsimile No.: (240) 744-1199

with a copy to:            DiamondRock Allerton Owner, LLC
                           c/o DiamondRock Hospitality Company
                           6903 Rockledge Drive, Suite 800
                           Bethesda, Maryland  20817
                           Attention:  General Counsel
                           Facsimile No.: (240) 744-1199

**Section 5.3** __Governing Law__.  This Guaranty shall be governed in accordance with the State of New York and the applicable law of the United States of America.

**Section 5.4** __Invalid Provisions__.  If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

**Section 5.5** __Amendments__.  This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

**Section 5.6** __Parties Bound; Assignment; Joint and Several__.  This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that Guarantor may not, without the prior written consent of Lender, assign any of its rights, powers, duties or obligations hereunder.  The obligations and liabilities of Guarantor hereunder shall, except as expressly set forth herein, be joint and several.

**Section 5.7** __Headings__.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

**Section 5.8** __Recitals__.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

**Section 5.9** __Counterparts__.  To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all Persons required to bind

10

any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.  Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

    **Section 5.10**  __Rights and Remedies__.  If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

    **Section 5.11**  __ENTIRETY__.  **THIS GUARANTY EMBODIES THE FINAL AND ENTIRE AGREEMENT OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTORS' GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF.  THIS GUARANTY IS INTENDED BY GUARANTOR AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THIS GUARANTY, AND NO COURSE OF DEALING BETWEEN GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT.  THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTOR AND LENDER.**

    **Section 5.12**  __WAIVER OF RIGHT TO TRIAL BY JURY__.  **EACH PARTY HERETO AND ALL PERSONS CLAIMING BY, THROUGH OR UNDER SUCH PARTY EACH HEREBY AGREE NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE LOAN AGREEMENT, THE MORTGAGE, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY HERETO AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY LENDER OR GUARANTOR, AS THE CASE MAY BE.**

**Section 5.13**  **Guarantor's Assets**.  Guarantor covenants and agrees that, except for normal and customary loan payments and distributions of capital and profits and the payment of employee salaries and benefits and dividends in the ordinary course of business, Guarantor shall not voluntarily dispose of its assets other than on an arms-length basis in exchange for fair consideration.

**Section 5.14**  **Reinstatement in Certain Circumstances**.  If at any time any payment of the principal of or interest under the Note or any other amount payable by the Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise and such payment satisfied any Guaranteed Obligations, Guarantor's obligations hereunder with respect to such Guaranteed Obligations shall be reinstated as though such payment has been due but not made at such time.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, Guarantor has executed this Guaranty Agreement as of the day and year first above written,

**GUARANTOR:**

**PS CDO MANAGER, LLC**
a Delaware limited liability company

By: _____
         Name:  Joseph Iacono
         Title:    Authorized Signatory

Schedule 1