## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ALT HOTEL, LLC | ) | Case No. 11-19401 (ABG) |
| | ) | |
| Debtor. | ) | **Hearing Date:** December 19, 2012 |
| | ) | **Hearing Time:** 9:30 a.m. |
| | ) | |

### SUMMARY OF FINAL APPLICATION OF
### NEAL WOLF & ASSOCIATES, LLC FOR ALLOWANCE OF
### COMPENSATION AND REIMBURSEMENT OF EXPENSES AS
### COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION

Name of Applicant: <u>Neal Wolf & Associates, LLC</u>

Authorized to Provide
Professional Services to: <u>Debtor and Debtor in Possession</u>

Date of Retention: <u>Effective May 5, 2011 by Order signed June 1, 2011</u>

Period for which Compensation
and Reimbursement is Sought: <u>May 5, 2011 through October 31, 2012</u>

Amount of Compensation Sought as
Actual, Reasonable, and Necessary: <u>$1,668,861.00</u>[1]

Amount of Expense Reimbursement Sought
as Actual, Reasonable, and Necessary: <u>$172,044.10</u>[2]

Type of Fee Application: Final Application

---

[1]  The gross amount of compensation originally sought as actual, reasonable and necessary is $1,680,652.00.  The $1,668,861.00 shown above is the net amount after deducting the amounts ($5,056.00 and $6,735.00) disallowed by the Court in its Orders granting in part the First and Second Interim Applications of NW&A.  (Docket Nos. 140 and 254)

[2]  The gross amount of expense reimbursement sought as actual, reasonable and necessary is $175,907.28.  The $172,044.10 shown above is the net amount after (i) deducting the amounts ($393.24 and $4,887.13) disallowed by the Court in its Order granting in part the First and Second Interim Applications of NW&A (Docket Nos. 140 and 254), and (ii) adding back in the amount of $1,417.19 that was allowed by the Court in its Order granting the Third Interim Application of NW&A (Docket No. 365).

The following summarizes prior applications for compensation and reimbursement of expenses filed in this case:

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) |
|---|---|---|---|
| 7/18/2011 | 5/5/2011 – 5/31/2011 | $127,090.70 | $127,090.70 |
| 8/15/2011 | 6/1/2011 – 6/302011 | $120,671.38 | $120,671.38 |
| 9/15/2011 | 7/1/2011 – 7/31/2011 | $67,771.11 | $67,771.11 |
| **10/4/2011 First Interim Application** | **5/5/2011 – 7/31/2011** | **$315,533.19** | **$310,083.95**[3] |
| 10/18/2011 | 8/1/2011 – 8/31/2011 | $200,499.55 | $196,374.77 |
| 11/22/2011 | 9/1/2011 – 9/30/2011 | $72,822.09 | $71,917.09 |
| 12/19/2011 | 10/1/2011 – 10/31/2011 | $83,637.72 | $79,035.79 |
| 2/10/2012 | 11/1/2011 – 11/30/2011 | $67,093.79 | $65,103.37 |
| **4/4/2012 Second Interim Application** | **8/1/2011 – 11/30/2011** | **$424,053.15** | **$412,431.02** |
| 3/14/2012 | 12/1/2011 – 12/31/2011 | $81,820.32 | $81,820.32 |
| 3/21/2012 | 1/1/2012 – 1/31/2012 | $93,979.26 | $93,979.26 |
| 5/17/2012 | 2/1/2012 – 2/29/2012 | $42,549.04 | $42,549.04 |
| 6/14/2012 | 3/1/2012 – 3/31/2012 | $60,619.49 | $60,619.49 |
| **9/18/2012 Third Interim Application** | **12/1/2011 – 3/31/2012** | **$278,968.11** | **$280,385.30**[4] |
| 6/27/2012 | 4/1/2012 – 4/30/2012 | $45,956.86 | $37,308.76[5] |
| 8/14/2012 | 5/1/2012 – 5/31/2012 | $47,639.59 | $38,884.79 |
| 8/17/2012 | 6/1/2012 – 6/30/2012 | $175,804.73 | $142,117.73 |
| 9/17/2012 | 7/1/2012 – 7/31/2012 | $348,988.17 | $284,008.37 |
| **TOTAL OF MONTHLY STATEMENTS ONLY** | | **$1,698,372.770** | **$1,505,219.92** |

The aggregate amount of fees and expenses paid to Neal Wolf & Associates, LLC ("NW&A") to date for services rendered and expenses incurred herein is $734,465.12.

---

[3]  The Court entered its Order Granting in Part First Interim Application of Neal Wolf for Allowance of Compensation and Reimbursement of Expenses in the reduced amounts of $301,281.50 in fees and $8,802.45 in actual and necessary expenses on November 2, 2011 (Docket No. 140).  The Court's Order did not provide a breakdown of the disallowed amounts and, therefore, the reductions are shown on the line item for the First Interim Application only.

[4]  The amount allowed by the Order for the Third Interim Application also included $1,417.79 which was inadvertently disallowed by the Order for the Second Interim Application.

[5]  The total allowed amount of fees and expenses listed as allowed for April 2012 to July 2012 is comprised of 80% of the actual amount of compensation sought and 100% of the expense reimbursement sought.  At the time the Court entered the Order Confirming the Debtor's Modified Second Amended Plan of Reorganization (Docket No. 374), NW&A had not filed a fourth interim application.  Thus the Court has not awarded NW&A the 20% holdback for those months.  This Final Application covers compensation and reimbursement of expenses for the period (August 1, 2012 through October 31, 2012) since the last monthly statement filed by NW&A (for July 2012).

Dated: November 12, 2012

By: /s/ Dean C. Gramlich
     Neal L. Wolf (ARDC No. 6186361)
     Dean C. Gramlich (ARDC No. 6191587)
     NEAL WOLF & ASSOCIATES, LLC
     155 N. Wacker Drive, Suite 1910
     Chicago, IL 60606
     Main: (312) 228-4990
     Fax:  (312) 228-4988
     nwolf@nealwolflaw.com
     dgramlich@nealwolflaw.com

     *Attorneys for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ALT HOTEL, LLC | ) | Case No. 11-19401 (ABG) |
| | ) | |
| Debtor. | ) | **Hearing Date:**   **December 19, 2012** |
| | ) | **Hearing Time:**   **9:30 a.m.** |
| | ) | |

**FINAL APPLICATION OF NEAL WOLF & ASSOCIATES, LLC
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION
FOR THE PERIOD COVERING MAY 5, 2011 THROUGH JULY 31, 2012**

Pursuant to sections 330(a) and 331 of the Bankruptcy Code, Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local

Bankruptcy Rules, effective as of January 1, 2012 (the "Local Bankruptcy Rules"), this

Court's Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 331 for Entry

of an Administrative Order Establishing Procedures for Interim Compensation and

Reimbursement of Professionals (Docket No. 87) ("Interim Fee Procedures Order"), and

certain applicable provisions of the United States Trustee's Guidelines for Reviewing

Applications for Compensation and Reimbursement Filed Under 11 U.S.C. § 330

(Appendix A to 28 C.F.R. § 58 (the "Guidelines")), Neal Wolf & Associates, LLC

("NW&A"), as counsel to ALT Hotel, LLC, the Debtor and Debtor in Possession (the

"Debtor") in the above-captioned case, hereby files this Final Application of Neal Wolf &

Associates, LLC for Allowance of Compensation and Reimbursement of Expenses as

Counsel for the Debtor and Debtor In Possession for the Period Covering May 5, 2011

Through July 31, 2012 (the "Final Application").

By this Final Application, NW&A seeks a final approval and allowance of fees in the amount of $1,668,861.00[1] and reimbursement of expenses in the amount of $172,044.10[2] for the period May 5, 2011 through and including October 31, 2012 (the "Final Application Period"). NW&A further requests that the Court direct the Debtor to pay to NW&A all fees allowed by the Court in connection with its consideration of the Final Application, including any fees held back from payment pursuant to this Court's Interim Fee Procedures Order, subject to the agreed fee cap and any subsequent agreement between the Debtor and NW&A with respect to payment in excess of the agreed fee cap.

# I.   FACTUAL BACKGROUND

## A.   **General Background**

1.      The Debtor is a Delaware limited liability company. Its sole member is Hotel Allerton Mezz, LLC, a Delaware limited liability company ("Hotel Allerton Mezz"). The Debtor's sole asset is a hotel in downtown Chicago, Illinois named the Allerton Hotel (the "Hotel"). The Hotel is managed by Kokua Hospitality, LLC ("Kokua") pursuant to a Hotel Management Agreement, dated November 9, 2006, between the Debtor and Kokua.

2.      In addition to 443 guest rooms, the Hotel provides 12,000 square feet of meeting and function space, a restaurant, a cocktail lounge, a business center and a fitness center.

3.      The Hotel, located on Michigan Avenue in the heart of the "Magnificent Mile," is a Chicago "landmark." It is listed on the National Register of Historic Places and was

---

[1]  The gross amount of compensation originally sought as actual, reasonable and necessary was $1,680,652.00. The $1,668,861.00 shown above is the net amount after deducting the amounts ($5,056.00 and $6,735.00) the Court disallowed in its Orders granting in part the First and Second Interim Applications of NW&A. (Docket Nos. 140 and 254)

[2]  The gross amount of expense reimbursement sought as actual, reasonable and necessary was $175,907.28. The $172,044.10 shown above is the net amount after (i) deducting the amounts ($393.24 and $4,887.13) the Court disallowed in its Order granting in part the First and Second Interim Applications of NW&A (Docket Nos. 140 and 254), and (ii) adding back in the amount of $1,417.19 that was allowed by the Court in its Order granting the Third Interim Application of NW&A (Docket No. 365).

designated an historic landmark by the City of Chicago.

B.    **Events Since Petition Date**

4.    On May 5, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues in possession of its property and continues to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.  The Office of the United States Trustee did not appoint a committee of unsecured creditors in the case.

5.    The Debtor filed bankruptcy in order to preserve what it and its owner, Hotel Allerton Mezz, believe is the substantial equity value in the Hotel.  The Debtor's secured creditor, DiamondRock Allerton Owner, LLC ("DiamondRock"), purchased its senior loan position for the purpose of acquiring the Hotel.  DiamondRock was pursuing a foreclosure action in Cook County Circuit Court at the time of the Petition Date.

6.    Until October 27, 2012, DiamondRock steadfastly opposed the Debtor's efforts to confirm a chapter 11 plan.  The parties engaged in substantial litigation regarding the Hotel's value and the interest rate and other terms of a restructured loan.  On October 27, 2012 (days before the recommencement of the confirmation hearing originally commenced on July 23, 2012), the Debtor and DiamondRock reached a settlement on the terms of a restructured loan and certain other matters.

7.    The Debtor and DiamondRock describe the restructured loan and the other terms and conditions of the settlement in the Debtor's Modified Second Amended Plan of Reorganization ("Modified Second Amended Plan"), filed with the Court on October 29, 2012 along with a new loan agreement (Docket No. 372).  After a brief confirmation hearing

on October 29, 2012, the Court entered an Order Confirming the Debtor's Modified Second

Amended Plan of Reorganization ("Confirmation Order") (Docket No. 374).

8.      The Modified Second Amended Plan provides, *inter alia*, for the filing of

final fee applications within ten (10) business days of confirmation, or by Monday,

November 12, 2012.

9.      The source of any further payment of the fees and expenses sought by NW&A

will be Hotel cash flow made available to the Debtor pursuant to paragraph 4 of the various

cash collateral orders in the case, the latest being the Eleventh Interim Order, entered by the

Court on August 23, 2012 (Docket No. 354) ("Cash Collateral Orders") and any subsequent

stipulations regarding use of Hotel cash flow.

C.      **Retention of NW&A**

10.     The Court approved the retention of NW&A, as counsel to the Debtor, pursuant to

its Order Approving the Application of the Debtor to Employ and Retain Neal Wolf As Its

Attorneys, signed on June 1, 2011 (Docket No. 63) (the "Retention Order").  The Retention

Order, *inter alia,* approved the retention of NW&A effective as of the Petition Date.  The

Retention Order authorized NW&A to be compensated on an hourly basis and to be reimbursed

for its actual and necessary out-of-pocket expenses.

11.     Subsequent to entry of the Retention Order, NW&A has at all times acted as

lead bankruptcy counsel to the Debtor in connection with this Case, including as lead

litigation counsel in connection with plan confirmation and an adversary proceeding filed

against DiamondRock.  As part of the settlement with DiamondRock, the Debtor dismissed

the adversary proceeding with prejudice.

     D.      **Jurisdictional and Statutory Basis for this Final Application**

12.     The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b) (2) and 1334.  The venue of this Case and this Final Application is proper in accordance with 28 U.S.C. §§ 1408 and 1409.

## II.    MONTHLY APPLICATIONS COVERED HEREIN

13.     As noted above, on or about June 1, 2011, the Court entered the Interim Fee Procedures Order.  The Interim Fee Procedures Order, *inter alia*, authorized professionals of the Debtor ("Professionals") to submit monthly statements for interim compensation and reimbursement for expenses, pursuant to the procedures specified therein.  If no objections are made within ten (10) days after service of the monthly fee statement, the Interim Fee Procedures Order authorized the Debtor to pay the respective Professional eighty percent (80%) of the requested fees and one hundred percent (100%) of the requested expenses.  Approximately every 120 days, each Professional was to file with the Court and serve on the Notice Parties (as defined in the Interim Fee Procedures Order) an application for allowance and payment of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.  All fees and expenses paid (whether based on the monthly fee statements or on interim fee applications) were paid on an interim basis until final allowance by the Court.  Through this Final Application NW&A seeks final allowance of fees and expenses previously allowed on an interim basis.

14.     Pursuant to the Interim Fee Procedures Order, NW&A has previously filed with the Court, and received full or partial payment on, fifteen monthly fee statements (for the period May 5, 2011 through July 31, 2012).  NW&A has also previously filed three interim fee applications, which were granted in substantial part.  *See* Docket Nos. 126, 140, 239, 254, 359 and 365.  Although NW&A did not file and serve monthly fee statements for

the periods August 1, 2012 through October 31, 2012, it is seeking allowance of compensation and reimbursement of expenses for these three months as part of this Final Application.

15.     As indicated in footnotes 1 and 2 above, the Court has previously granted approval of three interim applications filed by NW&A in connection with this chapter 11 case.  The Court granted the first and second interim applications (Docket Nos. 140 and 254) in part.  The Court reduced NW&A's fees by an aggregate amount of $11,791.00 and expenses by an aggregate amount of $5,280.37.  The Court granted the third interim application in full, and also granted a request for reimbursement of $1,417.19 in expenses deducted twice by the Debtor in connection with the Court's Order of April 25, 2012 (Docket No. 254).

16.     NW&A has not filed an interim application for the period April 1, 2012 through July 31, 2012.  Summaries of the professional services rendered by NW&A during this period are included in the summary of NW&A's work since the commencement of the case as set forth above.

17.     With respect to its monthly fee applications not covered by prior interim applications, NW&A states as follows:

(a)     On June 27, 2012, NW&A filed and served its Twelfth Monthly Statement as Counsel for the Debtor and Debtor in Possession Seeking Compensation and Reimbursement of Expenses for Period April 1, 2012 through April 30, 2012 (Docket No. 279) (the "Twelfth Statement").  The Twelfth Statement is included in **Group Exhibit D** hereto.  None of the Notice Parties objected to the Twelfth Statement.  After expiration of the ten-day period for objecting to the Twelfth Statement, or soon thereafter, the Debtor paid

NW&A $2,716.36 in expenses (100% of the expenses requested).[3]

(b)     On August 14, 2012, NW&A filed and served its Thirteenth Monthly Statement as Counsel for the Debtor and Debtor in Possession Seeking Compensation and Reimbursement of Expenses for Period May 1, 2012 through May 31, 2012 (Docket No. 348) (the "Thirteenth Statement"). The Thirteenth Statement is included in **Group Exhibit D** hereto. None of the Notice Parties objected to the Thirteenth Statement. After expiration of the ten-day period for objecting to the Thirteenth Statement, or soon thereafter, the Debtor paid NW&A $3,865.59 in expenses (100% of the expenses requested).

(c)     On August 17, 2012, NW&A filed and served its Fourteenth Monthly Statement as Counsel for the Debtor and Debtor in Possession Seeking Compensation and Reimbursement of Expenses for Period June 1, 2012 through June 30, 2012 (Docket No. 350) (the "Fourteenth Statement"). The Fourteenth Statement is included in **Group Exhibit D** hereto. None of the Notice Parties objected to the Fourteenth Statement. After expiration of the ten-day period for objecting to the Fourteenth Statement, or soon thereafter, the Debtor paid NW&A $7,369.73 in expenses (100% of the expenses requested).

(d)     On September 17, 2012, NW&A filed and served its Fifteenth Monthly Statement as Counsel for the Debtor and Debtor in Possession Seeking Compensation and Reimbursement of Expenses for Period July 1, 2012 through July 31, 2012 (Docket No. 358) (the "Fifteenth Statement"). The Fifteenth Statement is included in **Group Exhibit D** hereto. None of the Notice Parties objected to the Fifteenth Statement. After expiration of the ten-day period for objecting to the Fifteenth Statement, or soon thereafter, the Debtor

---

[3] The lack of fee payment for December and subsequent months results from NW&A's agreed fee cap. As described below, supplemental payments by the Debtor have substantially paid NW&A fees through October 2011. NW&A has received no payment of fees accruing during the period November 1, 2011 to October 31, 2012. The agreed fee cap permits reimbursement of allowed expenses.

paid NW&A $24,089.17 in expenses (100% of the expenses requested).

18.     The Debtor notes here and below that the July expenses include meal expenses of $1,852.95 incurred during the initial confirmation hearing.  NW&A understands that the Court normally does not allow meal expenses.  However, NW&A believes in this instance reimbursement of meal expenses is justified based on the unusual time pressures arising during the confirmation hearing.

### III.     MONTHLY INVOICES NOT COVERED BY PRIOR MONTHLY STATEMENTS

19.     NW&A has not filed a monthly fee statement with respect to the August 2012 invoice, which covers the period from August 1, 2012 through August 31, 2012 ("August Invoice").  NW&A seeks allowance of its compensation and reimbursement of expenses for the August Invoice as part of this Final Application.  NW&A is seeking $32,825.50 in fees and reimbursement of $5,597.56 in expenses.  A true and correct copy of the August Invoice is attached hereto as part of **Group Exhibit D.**  NW&A has not received any payment with respect to the August Invoice.

20.     NW&A has not filed a monthly fee statement with respect to the September 2012 invoice, which covers the period from September 1, 2012 through September 30, 2012 ("September Invoice").  NW&A seeks allowance of its compensation and reimbursement of expenses for the September Invoice as part of this Final Application.  NW&A is seeking $20,244.50 in fees and reimbursement of $2,761.41 in expenses.  A true and correct copy of the September Invoice is attached hereto as part of **Group Exhibit D.**  NW&A has not received any payment with respect to the September Invoice.

21.     NW&A has not filed a monthly fee statement with respect to the October 2012 invoice, which covers the period from October 1, 2012 through October 31, 2012

("October Invoice"). NW&A seeks allowance of its compensation and reimbursement of expenses for the October Invoice as part of this Final Application. NW&A is seeking $103,966.50 in fees and reimbursement of $54,220.01 in expenses. A true and correct copy of the October Invoice is attached hereto as part of **Group Exhibit D.** NW&A has not received any payment with respect to the October Invoice.

22.     NW&A, Petra Capital Management ("PCM") and the Debtor agreed that if, for any reason, the Debtor was unable to pay NW&A's allowed attorneys' fees and expenses, PCM would cause one of its affiliates to either (a) make a debtor-in-possession loan to the Debtor or otherwise enable the Debtor to pay NW&A's allowed and unpaid attorney's fees and expenses, or (b) pay such allowed fees and expenses directly to NW&A. The Debtor would seek approval of any such debtor-in-possession loan from the Court. As noted above, NW&A's post-petition fees are subject to a cap agreed to prior to the Petition Date. The cap does not apply to NW&A's expenses.

23.     On or about December 28, 2011, the Debtor agreed to allow payment of an additional $50,000 to NW&A in excess of the agreed fee cap. The $50,000 payment was debited against the balance in NW&A's trust account based upon the prior allowance of fees and expenses pursuant to the Interim Fee Procedures Order. The payment is included in the $734,465.12 aggregate amount of fees and expenses paid to NW&A to date for services rendered and expenses incurred.

24.     On or about May 8, 2012, the Debtor paid an additional $100,000 to NW&A in excess of the agreed fee cap. The $100,000 payment was debited against the balance in NW&A's trust account based on the prior allowance of fees and expenses pursuant to the Interim Fee Procedures Order. The Debtor netted the $100,000 against the reductions in

fees and expenses required by the Court in connection with NW&A's second interim fee application.  The net payment is included in the $734,465.12 aggregate amount of fees and expenses paid to NW&A to date for services rendered and expenses incurred.

25.    On or about July 16, 2012, the Debtor paid an additional $100,000 to NW&A in excess of the agreed fee cap.  The $100,000 payment was debited against the balance in NW&A's trust account based on the prior allowance of fees and expenses pursuant to the Interim Fee Procedures Order.  The net payment is included in the $734,465.12 aggregate amount of fees and expenses paid to NW&A to date for services rendered and expenses incurred.

26.    On or about July 30, 2012, the Debtor paid an additional $50,000 to NW&A in excess of the agreed fee cap.  The $50,000 payment was debited against the balance in NW&A's trust account based on the prior allowance of fees and expenses pursuant to the Interim Fee Procedures Order.  The net payment is included in the $734,465.12 aggregate amount of fees and expenses paid to NW&A to date for services rendered and expenses incurred.

27.    NW&A applied the payments detailed in the paragraphs above towards NW&A fees previously allowed by the Court. The $734,465.12 in aggregate payments accounts for all of NW&A's expenses through July of 2012 ($109,465.12), and substantially all of NW&A's fees through October of 2011 ($625,000.00).  NW&A has not received any compensation for fees earned for the period November 1, 2011 to October 31, 2012.  This amounts to $1,043,861.00 in fees.

28.    In connection with the compensation and expenses sought herein, neither NW&A nor its sole member, Neal L. Wolf, has received or been promised any

compensation for services rendered or to be rendered in any capacity in connection with this case other than as set forth herein.

29.    No agreement or understanding exists between NW&A and any third party for the sharing of compensation.

30.    All of the services for which NW&A requests compensation were rendered solely at the request of the Debtor and not on behalf of any other person or entity.

## IV.    EXHIBITS TO FINAL APPLICATION

31.    To assist the Court, the Debtor, the U.S. Trustee and the various parties in interest in analyzing NW&A's fees and expenses during the Final Application Period and as otherwise required, NW&A has attached the following exhibits:

(a)    In accordance with Local Rule 5082-1(B)(1)(e), **Exhibit A** hereto is a timekeeper summary showing the hourly rate of each attorney and legal assistant for whom compensation is requested, with the total number of hours expended and total compensation for which allowance is requested for each such attorney and legal assistant.

(b)    In accordance with Local Rule 5082-1(B)(1)(a), **Exhibit B** hereto is a summary list showing all activity categories into which NW&A organized its work and the total fees in each such category.

(c)    In accordance with Local Rule 5082-1(b)(1)(d), **Exhibit C** hereto is a summary showing each professional who performed work in a given activity category, the hours worked in each activity category by each such professional and the total compensation requested by that professional in each activity category.

(d)    In accordance with Local Rule 5082-1(B)(1)(b) and (C), **Group Exhibit D** consists of NW&A's monthly fee statements for the period April 2012 through July 2012 and its invoices for the period August 2012 through October 2012.  Group Exhibit

D describes in detail each activity performed by a billing professional, divided by activity

category, and showing (i) the date the work was performed; (ii) the name of the professional

performing the work; (iii) a brief statement showing the nature of the work and (iv) the time

expended on the work in tenth of an hour increments.

(e)      NW&A's invoices for the period May 2011 through March 2012 are

attached to NW&A's prior monthly and interim applications.  The legal services rendered

by NW&A during the Final Application Period are summarized below.

(f)      In accordance with Local Bankruptcy Rule 5082-1(B)(1)(g), **Exhibit E**

hereto is a summary showing the total expenses for which reimbursement is sought, broken

down by expense category.

32.      In addition to the foregoing Exhibits, **Exhibit F** hereto is the Declaration of

Dean C. Gramlich in support of the Final Application. Also submitted herewith is a

proposed form of order approving the Final Application.

## V.      NARRATIVE SUMMARY

### A.      **General Summary**

33.      NW&A hereby seeks final approval and allowance of compensation earned

during the Final Application Period in the amount of $1,668,861.00 and allowance of

expenses in the amount of $172,044.10.

34.      During the Final Application Period, NW&A advised the Debtor with respect

to a substantial number of bankruptcy matters relating to the preservation of the estate.  This

involved legal work on numerous issues, including the prosecution of first day motions, use

of cash collateral and obtaining post-petition financing.  At the beginning of the case,

NW&A successfully prosecuted a number of first day motions, including motions that

allowed funding of various payments to employees and provided for adequate assurance of future performance to the Hotel's utilities.  NW&A assisted the Debtor in negotiating multiple cash collateral orders with DiamondRock, thus insuring the continued and uninterrupted operation of the Hotel notwithstanding the chapter 11 filing.  NW&A also assisted in negotiation of a DIP financing agreement with DiamondRock.

35.     The Debtor filed this Case for the purpose of obtaining confirmation of a plan of reorganization that preserved the substantial amount of equity in the Hotel for existing ownership.  The Debtor filed its initial plan of reorganization on December 16, 2011.  The Debtor filed an initial disclosure statement on January 25, 2012 and a first amended disclosure statement on March 19, 2012.  The Court approved the first amended disclosure statement on April 9, 2012 (Docket No. 243).  BMC Corporation, the Debtor's solicitation agent, finalized and served the solicitation packages applicable to the different creditor and equity classes.  The confirmation hearing commenced on July 23, 2012, and was continued to October 29, 2012.  Based on the settlement with DiamondRock, the Debtor confirmed a consensual plan on October 29, 2012.  NW&A's efforts on behalf of the Debtor were crucial in confirming a chapter 11 plan.

36.     NW&A has also represented the Debtor in a number of other litigation and case-related matters.  NW&A and Kokua negotiated an agreement with Kokua regarding extending the period for termination of the Kokua management agreement and worked extensively with Kokua on first-day motions and cash flow issues.  NW&A also represented the Debtor in the adversary proceeding that the Debtor and Hotel Allerton Mezz brought against DiamondRock in July 2011(Adv. No. 11-01469).  NW&A lead counsel Neal Wolf also participated in extensive settlement negotiations with DiamondRock's counsel

regarding overall resolution of the disputes with DiamondRock and advised the Debtor
regarding the off and on negotiations with DiamondRock.

37.    NW&A has staffed its representation at all times to avoid duplication of effort
among the multiple NW&A attorneys and legal assistants or duplication with the services of
the consultants retained by the Debtor.  Because NW&A has a relatively small number of
personnel, at times practically all the professionals in the firm's Chicago office were
working on matters for the Debtor.  NW&A has provided high quality services on a variety
of legal and factual issues at rates which favorably compare with those of other law firms of
similar experience and ability.

### B.    Detailed Summary

38.    In accordance with Local Bankruptcy Rule 5082-1(B)(1), the principal
activity categories performed by NW&A on behalf of the Debtor during the Fourth Interim
Application Period generally have been characterized according to the subject matter
involved as required by the Guidelines. The principal activities are:

a.    General (Matter #001).  NW&A seeks fees of $55,531.00[4] with respect
to this activity category.

b.    Employment and Fee Applications (Matter #002).  NW&A seeks fees
of $119,506.50 with respect to this activity category.

c.    Plan of Reorganization and Disclosure Statement (Matter #003).
NW&A seeks fees of $832,563.50(N) with respect to this activity category.

---

[4]  As noted in footnote 3 above, the Court's Order Granting the First Interim Application (Docket No. 140) did not
provide a breakdown of the disallowed amount in fees ($5,056.00).  The Court's Order Granting the Second Interim
Application (Docket No. 254) did provide a breakdown and such amounts have been applied to the respective
categories.  Therefore, the amounts listed for each category in section IV.B. is (i) the gross amount or (ii) the net
amount after applying the amount disallowed by the Court's Order Granting in Part Second Interim Application,
which net amount will have the designation "(N)" besides the amount listed.

d.      Cash Collateral (Matter #004).  NW&A seeks fees of $157,328.00(N) with respect to this activity category.

e.      Communication with Creditors (Matter #005).  NW&A seeks fees of $9,601.00(N) with respect to this activity category.

f.      Claims Objections (Matter #006).  NW&A seeks fees of $10,135.50 with respect to this activity category.

g.      Asset Sales (Matter #007).  NW&A seeks fees of $1,646.00 with respect to this activity category.

h.      Employee Matters (Matter #008).  NW&A seeks fees of $16,324.00 with respect to this activity category.

i.      Tax Matters (Matter #009).  NW&A seeks fees of $3,580.00 with respect to this activity category.

j.      Vendor/Utility Matters (Matter #010).  NW&A seeks fees of $10,894.00 with respect to this activity category.

k.      Schedules/SOFAs (Matter #011).  NW&A seeks fees of $22,478.50 with respect to this activity category.

l.      Litigation (Matter #012).  NW&A seeks fees of $441,064.00(N) with respect to this activity category.

39.      The following principal activities undertaken by NW&A are, in accordance with Local Bankruptcy Rule 5082-1(B)(1), more particularly described as follows:

a.      General (Matter #001).  This activity category pertains to the general administration of the case and all work that does not fit within more specific activity categories. During the course of the Case, NW&A generally assisted the Debtor in

administering, managing and coordinating the chapter 11 case through reviewing docket

entries, monitoring critical dates and preparing for conferences and discussing various

strategic issues with the Debtor's representatives.  NW&A also assisted one of the Debtor's

representatives, Mark Mortensen, in preparing for the first meeting of creditors pursuant to

section 341 of the Bankruptcy Code.

NW&A attorneys conferred with the Debtor regarding the employment of FTI Consulting

("FTI") as the Debtor's financial advisor.  NW&A also assisted the Debtor and FTI in

preparing monthly operating reports for filing with the Court and review by the U.S.

Trustee. NW&A advised the Debtor on the hiring of BMC Group ("BMC") as the Debtor's plan

solicitation agent, and communicated with BMC regarding all issues relating to the plan

solicitation package.

NW&A assisted the Debtor in its negotiations with Kokua regarding assumption of

the management agreement.  NW&A communicated with the Debtor, FTI and DiamondRock

counsel regarding extension of the discovery cutoff date.

b.    Employment and Fee Applications (Matter #002).  This category

relates to the preparation and filing of NW&A's monthly fee statements and NW&A's

interim fee applications. At the onset of the case, NW&A prepared the application to

approve the retention of NW&A as counsel to the Debtor, which the Court approved on a

*nunc pro tunc* basis on June 1, 2011.  In June, NW&A filed a motion for approval of the

Interim Fee Procedures Order, entered by the Court on July 7, 2011.

Additionally, a portion of time associated with this category relates to the

employment and/or payment of other Debtor professionals.  Throughout the Case NW&A

has analyzed issues relating to the retention of other Debtor professionals.  NW&A prepared

and filed retention applications for FTI and BMC, and throughout the case NW&A helped

these professionals prepare applications for allowance of compensation and attended various

hearings on these applications. NW&A also analyzed and prepared responses to

DiamondRock's objections to the retention of FTI and communicated with the U.S. Trustee

regarding the retention and compensation issues.

Fees billed in this activity category amounted to $119,506.50 over the entirety of the

Final Application Period, and comprise approximately 7.1% of NW&A's total fees.

c.    Plan of Reorganization and Disclosure Statement (Matter #003).  This

activity category includes all work relating to the Debtor's plan of reorganization and

disclosure statement, including work related to valuation of the Hotel and preparation for the

confirmation hearing.  At the beginning of the case, NW&A prepared a motion pursuant to

Bankruptcy Rule 3012 to value DiamondRock's collateral the ("Valuation Motion") and

interviewed and selected valuation and other consultants to be used in connection with the

Valuation Motion and confirmation of the Plan. NW&A ultimately consolidated the

valuation issues raised in the Valuation Motion with plan confirmation.

NW&A attorneys prepared and filed a motion to extend the exclusivity periods.

NW&A attorneys spent a significant amount of time drafting and filing the initial plan of

reorganization, the first amended plan (dated July 9, 2012) and the Modified Second

Amended Plan containing the basic settlement with DiamondRock.  NW&A prepared the

disclosure statements associated with the initial plan. NW&A also participated in extended

discussions with the Debtor and FTI regarding the terms of the plan.

NW&A analyzed DiamondRock's objection to the initial disclosure statement, and

prepared a response to the objection.  NW&A revised and filed a first amended disclosure

statement which was approved on April 9, 2012. NW&A also engaged in work related to a revised valuation of the Hotel, including internal conference calls and meetings.  NW&A attorneys also prepared and filed a motion to approve the disclosure statement in March 2012 and various notices and ballots directed toward the various classes.

In connection with the solicitation of acceptances or rejections to the plan, NW&A revised solicitation package documents to conform to the Court's order approving the disclosure statement. NW&A finalized the solicitation package and prepared a solicitation matrix.  NW&A communicated with BMC regarding service of the solicitation package documents and, after the voting deadline, the tabulation of acceptances and rejections of the Plan and preparation of a tabulation affidavit.

Throughout all stages of the Case NW&A communicated and met with the Debtor and counsel for DiamondRock regarding various settlement proposals, issues and options, and NW&A prepared and revised various non-binding term sheets for review by the parties.

NW&A acted as lead counsel for the Debtor in connection with a variety of discovery matters relating to first the Valuation Motion and then confirmation.  NW&A negotiated with counsel for DiamondRock regarding the plan confirmation discovery schedule and due dates for expert reports.  NW&A attorneys engaged in the review of thousands of pages of documents and produced documents to DiamondRock pursuant to its various requests.  NW&A also prepared and served document requests upon DiamondRock.  NW&A negotiated with counsel for DiamondRock regarding the discovery schedule (both in the late summer/early fall period of 2011 and again in May and June of 2012) and the exchange of expert reports.  NW&A attorneys prepared for and attended various depositions.

NW&A communicated with various expert witnesses regarding their respective reports.

NW&A reviewed DiamondRock's and Kokua's objections to the Plan and researched and analyzed feasibility and other plan confirmation issues.  NW&A then drafted and on July 9, 2012 filed the Debtor's brief in support of plan confirmation and in response to plan objections filed by DiamondRock and Kokua.

NW&A lead counsel Neal Wolf made multiple trips to New York to attend meetings with the Debtor and FTI Consulting to prepare for the confirmation hearing.  Mr. Wolf reviewed expert reports and analyzed financial and other factual information in connection with his preparation for trial.  He also worked with Tower Design Group on preparation of demonstrative exhibits used at the confirmation hearing.  He worked extensively with the Debtor's witnesses in preparing for the confirmation hearing.

NW&A prepared both the Debtor's exhibits and exhibit and witness lists for submission to the Court pursuant to its pretrial order.  NW&A communicated with DiamondRock regarding a stipulation on admissibility and authenticity of certain of the Debtor's and DiamondRock's confirmation exhibits. NW&A also drafted objections to certain DiamondRock confirmation exhibits and conducted research on evidentiary issues.

Following the confirmation hearing in July, NW&A prepared for the second phase of the confirmation hearing which was scheduled to commence on October 29, 2012. NW&A conducted research regarding plan feasibility, plan confirmation, and evidentiary issues. NW&A discussed case issues with consultants and potential experts.  Lead counsel Neal Wolf began preparations of the Debtor's and the cross examination of DiamondRock's witnesses.

Throughout September and October 2012, NW&A was in constant communication with the Debtor and DiamondRock regarding settlement negotiations. NW&A helped negotiate a settlement between the Debtor and DiamondRock, and NW&A coordinated with

DiamondRock's counsel in the preparation of the Modified Second Amended Plan of

Reorganization and a proposed confirmation order.  On October 29, 2012, the Court entered the

Confirmation Order.

        d.    <u>Cash Collateral/DIP Financing (Matter #004).</u>  This category includes

matters relating to the work done in connection with both the use of cash collateral itself and

a post-petition loan from DiamondRock.  The terms of the use of cash collateral constituted

one of the most pressing matters facing the Debtor.

        NW&A prepared the Debtor's first motion for use of cash collateral (filed on May 6

on an emergency basis), and negotiated the terms of an initial order approving the use of

cash collateral with DiamondRock (entered by the Court on May 9, 2011, Docket No. 24).

Thereafter NW&A prepared numerous motions for use of cash collateral and negotiated

with DiamondRock regarding the terms of each subsequent interim cash collateral order and

the attached budgets. NW&A attorneys also prepared for and attended hearings related to

cash collateral usage.

        In conjunction with discussions on cash collateral usage, NW&A engaged in

discussions with DiamondRock regarding a debtor-in-possession financing facility with (the

"DIP Financing Facility").  These negotiations culminated in February 2012 with the

Court's entry of an Order approving the financing agreement with DiamondRock, which

agreement was attached to the Order.

        In a matter related to the periodic budgets attached to the Court's cash collateral

orders, NW&A reviewed and revised a motion to approve a stipulation with Kokua

memorializing its right to an extended termination notice. NW&A also participated in

negotiations with DiamondRock and Kokua regarding amendment of the budget to allow for

payment of the quarterly U.S. Trustee fee.

      e.      <u>Communication with Creditors (Matter #005).</u> This activity category includes all matters related to communications with creditors regarding non-payment and other issues. NW&A attorneys prepared a bar date motion, notice and order, and, after receiving Court approval, served the same on the Debtor's creditors.  NW&A communicated with certain individual creditors, as necessary, regarding proofs of claim filed, the status of the bankruptcy case and various other issues.  NW&A attorneys reviewed proofs of claim and related transfer documentation and prepared a notice of contract/lease assumption.

      f.      <u>Claims Objections (Matter #006).</u>  This activity category includes additional matters relating to creditor claims and objections. During the case, NW&A analyzed and indexed proofs of claim and claim transfers as they were filed with the Court. NW&A negotiated with creditor Testa Produce regarding its trust fund claims under the Perishable Agricultural Commodities Act and creditor CIT Technology regarding its claims. NW&A also analyzed a contingent claim asserted by National Retirement Fund.

      NW&A analyzed DiamondRock's proof of claim. In July, NW&A prepared and filed an objection to DiamondRock's proof of claim and attended several hearings on the objection to the claim. This objection was withdrawn as a result of the settlement.

      g.      <u>Asset Sales (Matter #007).</u> This activity category includes all matters relating to the sale of the Hotel and other assets of the Debtors.  NW&A attorneys participated in discussions with several parties with an interest in purchasing the Hotel as an ongoing operating entity.

      h.      <u>Employee Matters (Matter #008).</u> This activity category includes all

matters relating to the employees working at the Hotel. An initial issue facing the Debtor

was that under its management agreement with Kokua, Kokua had the direct relationship

with the employees staffing the Hotel.  Thus, although the Debtor's operational revenues

funded payments of wages, salaries, health insurance premiums and other benefits, none of

the Kokua employees had priority claims for amounts owed on a pre-petition basis.  To

address this issue, NW&A prepared and successfully prosecuted two motions early in the

case granting the Debtor authority under section 363 of the Bankruptcy Code to fund the

payment of pre-petition employee wages, salaries, health insurance premiums and other

employee benefits and union dues.  The Court approved both motions (Docket Nos. 32 and

48).  Obtaining this relief was critical to the Debtor's efforts to maintain its ongoing hotel

operations.

      i.      <u>Tax Matters (Matter #009)</u>.  This activity category includes certain tax-

related matters of the Debtor.  Shortly after the commencement of the case, NW&A

performed work related to payment of the Debtor's pre-petition withholding tax and other

tax claims.  NW&A attorneys prepared a motion to authorize the payment of sales and other

trust fund taxes and prepared for the hearing on the motion.

      j.      <u>Vendor/Utility Matters (Matter #010)</u>. This activity category includes

certain matters related to the Debtor's relation to its utilities and other vendors.  NW&A

prepared an initial motion to provide adequate assurance of payment to utilities pursuant to

section 366 of the Bankruptcy Code.  Although the Court initially denied the motion without

prejudice, NW&A re-filed and served the motion a second time (Docket No. 60) and the

Court approved this second utilities motion on June 6, 2011 (Docket No. 66).  Approval of

this motion helped insure a steady supply of power and other essentials to the Hotel.

k. Schedules/SOFAs (Matter #011). This activity category covers the preparation of the Debtor's schedules and its statement of financial affairs early in the case. At the commencement of the case, NW&A filed a motion requesting an extension of the deadline for filing the Debtor's schedules and statements. NW&A worked with representatives of Kokua and the Debtor on obtaining and analyzing the data needed to complete the schedules and the statement, and filed the Debtor's schedules and statement of financial affairs on June 11, 2011.

l. Litigation (Matter #012). This activity category covers various litigation matters involving DiamondRock over various issues relating to the chapter 11 case, including the adversary proceeding. It should be noted that, as of May 2012, NW&A attorneys and legal assistants began billing all plan-related litigation under Matter #003 (Plan of Reorganization and Disclosure Statement).

At the beginning of the case, NW&A attorneys successfully opposed DiamondRock's motion to lift the automatic stay. NW&A attorneys prepared and filed an adversary proceeding seeking equitable subordination of DiamondRock's claim and other relief. DiamondRock moved on a number of occasions to dismiss the adversary proceeding and NW&A amended the complaint on a number of occasions. In January 2012, NW&A prepared a detailed response to DiamondRock's motion to dismiss the equitable subordination litigation.

On September 25, 2012, the Court issued a memorandum opinion on DiamondRock's motion to dismiss the equitable subordination complaint. The Court largely granted the motion, but did deny dismissal of the Debtor's claim for breach of the November 9, 2006 loan agreement. NW&A analyzed the Court's opinion and prepared a

fourth amended complaint. The fourth amended complaint was never filed due to the settlement

reached with DiamondRock.

As noted above, some of the discovery regarding valuation issues were included in

this matter.  NW&A reviewed and responded to various subpoenas and document demands

issued to the Debtor and third parties by DiamondRock and reviewed documents for the

purpose of complying with DiamondRock's Rule 34 document request.  NW&A attorneys

reviewed and analyzed thousands of documents provided by the Debtor in anticipation of

production to DiamondRock and prepared a privilege log. NW&A completed production of

those documents to DiamondRock on September 9, 2011. NW&A retained the litigation

support firm of Landmark Legal Solutions to help facilitate the creation and management of

several document review databases required to assist with the production.

### DESCRIPTION OF EXPENSES INCURRED

40.     NW&A seeks reimbursement of its actual and necessary expenses incurred in

rendering services during the Final Application Period.  The total amount of expenses for

which reimbursement is sought is $172,044.10.  **Exhibit E** hereto is a summary by type of

all expenses incurred by NW&A during the Final Application Period.

41.     The majority of the expenses NW&A incurred during the Final Application

Period were due to preparations for the confirmation hearing.  The cost of court reporting

services for the depositions of the expert witnesses totaled $5,823.05, and the cost of daily

confirmation hearing transcripts totaled $6,869.90.  Trial support services for poster board

exhibits and copies of exhibit binders for the Court and other parties totaled $16,196.18.

NW&A incurred travel expenses of $14,976.38 with respect to travel by lead counsel Neal

Wolf to meet with the Debtor and consulting and testifying experts located in the New York

city area and to attend depositions.  Expense reimbursement is also sought for Pacer charges

related to the monitoring of the docket in this case, minor conference call charges from

NW&A's third-party provider and other out of pocket expenses.

42.     During the course of phase one of the confirmation hearing (July 23-27,

2012), NW&A had meals delivered to its offices for its attorneys, clients and testifying

experts to facilitate preparations for the confirmation hearing.  The cost of these meals

totaled $1,852.95.  NW&A understands that the Court does not ordinarily allow meal

expenses.  However, NW&A asks that due to the unusual time pressures attendant to the

confirmation hearing, the Court allow an exception in this instance.  Finally, a significant

portion ($68,684.77) of the expenses sought in the Final Application Period relate to third-

party costs for document production, including scanning documents and electronically

storing documents.  NW&A believes that the fees charged by Flex Discovery, formerly

known as Landmark Legal Solutions, are reasonable and necessary given the amount of

discovery sought by DiamondRock in connection with the value of the Hotel and other

confirmation issues.

43.     NW&A has not requested reimbursement for any luxury items.  NW&A has

not marked up the expenses for which NW&A seeks reimbursement.  Pursuant to the

Court's direction, NW&A is not requesting reimbursement for any computer research

charges (i.e., LexisNexis or WestLaw).

## VI.   THE COMPENSATION AND EXPENSE REIMBURSEMENT SOUGHT BY NW&A ARE REASONABLE

44.     To grant a request for compensation under sections 330 and 331 of the

Bankruptcy Code, a bankruptcy court must find that such request is reasonable.  As

amended in 1994, section 330 of the Bankruptcy Code states:

In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issues, or task addressed;

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[5]

11 U.S.C. § 330.

Bankruptcy courts in this District typically engage in the so-called "lodestar

---

[5]    The factors set forth are quite similar to those prevailing at the time of section 330's amendment. The often cited case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), sets forth the following factors to be considered in approving attorneys' fees:

a) the time and labor required; (b) the novelty and difficulty of the questions presented; (c) the skill required to perform the services properly; (d) the preclusion of other employment due to acceptance of the case; (e) the customary fee to non-bankruptcy clients for the services rendered; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or other circumstances; (h) the amount involved and the results obtained; (i) the experience, reputation and ability of the attorneys; (j) the undesirability of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases.

It should be noted that section 330(a)(3) of the Bankruptcy Code requires consideration of all relevant factors, including those specifically enumerated. Under section 102(3) of the Bankruptcy Code, use of the term "including" is not limiting.

approach." The lodestar approach is a two-step process involving the calculation of a

lodestar figure (the time expended multiplied by hourly rate) and adjustment of this figure

based on the factors referenced above. Based on the lodestar approach, NW&A is entitled to

the compensation requested for the Final Application Period. NW&A provided necessary

and important services to the Debtor in connection with this complex case. In particular,

NW&A attorneys obtained relief related to cash collateral usage necessary to maintain the

operations of the Hotel. NW&A has ably represented the Debtor in substantial litigation

with DiamondRock. NW&A has provided substantial assistance in moving the

confirmation process forward. The three senior attorneys at NW&A—Neal Wolf, Gerald

Munitz and Dean Gramlich—have a combined 112 years of experience in bankruptcy

practice and are well-regarded in the field. The rates charged by NW&A are reasonable and

commensurate with or below that of the billing rates of other bankruptcy attorneys with

similar levels of experience. As demonstrated above, NW&A's expenses were actual and

necessary in light of the work required.

## VII.   REQUEST TO APPROVE LIMITED NOTICE

45.     NW&A has provided copies of this Final Application to (a) Locke Lord LLP and

DLA Piper LLP, the two law firms primarily representing DiamondRock in this case; (b) the

Office of the United States Trustee for the Northern District of Illinois; (c) Paul Hastings LLP,

the law firm representing Kokua in this Case; and (d) those persons who have formally appeared

and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the

"Notice Parties").

46.     Additionally, NW&A has served on all creditors and parties in interest by first

class mail a notice of hearing on this Final Application (and the final applications of BMC and

FTI). The notice identifies each applicant, the amount of fees requested and the amount of

expenses for which reimbursement is sought.  The notice also provides directions on requesting a hard copy from the Debtor of each fee application.

47.     NW&A requests that the Court excuse the notice requirement of Bankruptcy Rule 2002(a)(6) and approve the limited notice of the Final Application as sufficient and appropriate under the circumstances.  Limited notice of the Final Application is sufficient in light of the expense to the Debtor's bankruptcy estate of individually serving all creditors and parties in interest with the entire Final Application and the lack of an offsetting benefit given that the Notice Parties, including the United States Trustee, will receive copies of this Final Application. Further, the detailed notice of hearing provides all creditors with instructions on how to request a hard copy.

## VIII.  CONCLUSION

48.     For the foregoing reasons, the fees requested in this Final Application are reasonable and reflect the value of the services provided to the Debtor in accordance with section 330 of the Bankruptcy Code.  Moreover, NW&A has requested reimbursement only of its actual and necessary expenses.

*[Remainder of page intentionally left blank]*

**WHEREFORE,** NW&A respectfully requests that the Court enter an Order:

a.      allowing compensation for legal services rendered during the Final Application Period in the amount of $1,668,861.00;

b.      allowing reimbursement of expenses incurred during the Final Application Period in the amount of $172,044.70;

c.      ordering the Debtor to pay to NW&A the fees approved by the Court previously held back pursuant to the Interim Fee Procedures Order, to the extent of any subsequent agreed increase in the fee cap; and

d.      granting such other and further relief as the Court deems appropriate.

Dated:  November 12, 2012

By: /s/ Dean C. Gramlich
        Neal L. Wolf (ARDC No. 6186361)
        Dean C. Gramlich (ARDC No. 6191587)
        NEAL WOLF & ASSOCIATES, LLC
        155 N. Wacker Drive, Suite 1910
        Chicago, IL 60606
        Main: (312) 228-4990
        Fax:   (312) 228-4988
        nwolf@nealwolflaw.com
        dgramlich@nealwolflaw.com

        *Attorneys for the Debtor and Debtor-in-Possession*